IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BARBARA JO NORTH, individually and as guardian of NICOLE MARIE NORTH, and STEVEN REED NORTH,<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY, a Delaware Co., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT ON THE DEFECT CLAIMS AND FOR FAILURE TO PRESERVE THE SUBJECT VEHICLE AND RULING ON FORD'S *DAUBERT* MOTIONS<br><br>Case No. 2:00-CV-958 TS |

I. INTRODUCTION

This case has a complicated procedural history due to a transfer to the Multidistrict Litigation Panel (MDL). The parties are familiar with the factual and procedural history and the Court will recite only the background facts which are necessary for context. Plaintiff Barbara Jo North (North) brings this action against Defendant Ford Motor Company (Ford)

on behalf of herself, her daughter Nicole and her son Steven (collectively Plaintiffs), for product liability and negligence.

In 1992, North was driving a 1992 Ford Explorer (Explorer) eastbound along I-80 about 40 miles east of Wendover. Nicole and Steven Ford, then aged 12 and 15, were passengers. The parties dispute the circumstances of the accident, but agree that the Explorer rolled over several times. The occupants were all seriously injured and the children were ejected.

On December 13, 2000, Plaintiffs filed this action against Ford and against the Bridgestone/Firestone tire company. The case was transferred to the MDL on February 27, 2001.

The MDL dismissed the claims against tire company defendant and dismissed Barbara Jo's and Steven North's negligence claims against Ford on statute of limitations grounds. Nicole North's negligence claim survived because it was tolled while she was a minor and she was younger than her brother. On July 18, 2005, the MDL remanded this case back to this Court for further proceedings on the remaining claims for negligence and product liability.

Ford seeks summary judgment on the defect claims and for the failure to preserve the subject Explorer. Ford also brings five *Daubert* motions, each seeking to exclude opinion evidence offered by one of Plaintiffs' experts.

II. SUMMARY JUDGMENT MOTION

Ford seeks summary judgment on three bases: One, Plaintiffs cannot prove the Explorer was unreasonably dangerous or defective. Two, Plaintiffs cannot show that their

injuries and damages were proximately caused by a defect in the Explorer. Three, that Plaintiffs' failure to preserve the subject vehicle warrants dismissal of their claims. Plaintiffs contend that their evidence is sufficient on the elements of claim and that dismissal on the basis of spoliation is not warranted.

The parties agree on the standard for summary judgment and on the elements of the negligence and product liability claims.

"Summary judgment is proper only if there is no genuine issue of material fact for determination, and the moving party is entitled to judgment as a matter of law."[1] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way and is 'material' when it is essential to the proper disposition of the claim."[2] The Court reviews "the entire record on summary judgment . . . in the light most favorable to the party opposing summary judgment."[3]

Ford first argues that Plaintiffs cannot prove the Explorer was unreasonably dangerous or defective. Having considered the record on summary judgment, the Court finds that Plaintiffs have met their burden in opposing summary judgment on the unreasonably dangerous or defective claim by the testimony of their expert Dr. Renfroe regarding the Explorer's propensity to roll, that it was the result of a design defect known

---

[1] *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1250 (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476 (10th Cir. 1990)).

[2] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir.2001)).

[3] *Durham*, *supra*, at 1250.

to Ford when the Explorer was put on the market, and that the propensity made the Explorer unreasonably dangerous.

Ford hotly disputes this evidence and offers its own statistical evidence that the Explorer has exceptionally safe stability and handling.  The Court believes that it is for the jury to assess the credibility of the competing experts and to determine the weight they will give to this conflicting evidence on design.

Ford next argues that Plaintiffs cannot show that their injuries and damages were proximately caused by a defect in the Explorer.  The Court finds that Plaintiffs have met their burden of showing that there is a material issue of fact on proximate causation. Again, this is an area of conflicting evidence.  As in the case *McCorvey v. UDOT*,[4] the jury in this case can be instructed that "there can be more than one proximate cause or, more specifically, substantial causative factor, of an injury."[5] In making its determination on proximate causation, the jury will be able to consider all of the parties' evidence and arguments regarding proximate causation and make their determination on the conflicting evidence.

On the issue of the alleged spoliation of the evidence of the Explorer by the Plaintiffs, the Court finds that there is no evidence of deliberate or even negligent spoliation. Plaintiffs present evidence showing that shortly after the accident, the Explorer was in the hands of the insurance company and Mr. North[6] signed the paperwork

---

[4] 868 P.2d 41 (Utah 1993).

[5] *Id.* at 45.

[6] Mr. North was never a party to this case and he is apparently now deceased.

necessary for the vehicle to be disposed of by the insurance company. This was well before the time that the Plaintiffs allege that they received notice of the alleged design defect.

The Tenth Circuit recently reviewed spoliation in *103 Investors I, L. P. v. Square D Co.*,[7] where it quoted with approval its prior unpublished case *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*[8] In the *Jordan F. Miller* case, the Circuit Court held that in determining whether to sanction a party for the spoliation of evidence, the two factors that carry the most weight are "(1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party."[9] Here, Mr. North, who authorized the salvage by the insurance company is not a party and there is no evidence that at the time the insurance company salvaged the vehicle that the parties had notice of the possible design defect now alleged. Thus, the culpability factor does not weigh in favor of a sanction. Plaintiffs' lack of any culpability and the fact that this case involves a design defect case distinguishes this case from the *103 Investors* case. In that case, the trial court found that the plaintiff "had a duty to preserve the evidence because it knew or should have known that litigation was imminent and defendant was prejudiced by the destruction of the evidence because there was no substitute for a direct visual

---

[7] 470 F.3d 985 (10th Cir. 2006).

[8] *Id.* at 989 (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*, 1998 WL 68879, *3-4 (10th Cir. 1998)).

[9] *Id.*

examination" of the product because a major issue in the case was whether there were warning labels on the product.[10]

In contrast, this case is one where the potential prejudice to a defendant from the loss of an allegedly defective product is much less because the alleged defect is a defect in design rather than in manufacturing.[11]  As stated in one product liability treatise:

> Many courts recognize that in cases alleging design defects–as opposed to manufacturing defects–the loss of the vehicle . . . that caused the injuries is not automatically prejudicial to the manufacturer, and that a drastic sanction such as summary judgment is not warranted. This is because the alleged defect will be apparent in other products of the same design.[12]

The Court finds that there is prejudice, but that it is lessened by the fact that there is other evidence available, such as the Highway Patrol photographs, field diagram measurements, and witness statements.[13]

---

[10] 1998 WL 68879 at 3-4.

[11] *See, e.g., Collazo-Santiago v. Toyota Motor Corp.,* 149 F.3d 23, 29 (1st Cir.1998) (denying motion to dismiss for failure to preserve vehicle with allegedly defective air bag because prejudice to manufacturer was lessened where it was a design defect claim); *Bericochea-Cartagena v. Suzuki Motor Co.,* 7 F.Supp.2d 109, 113 (D.P.R.1998) (denying motion to dismiss due to destruction of vehicle where the complaint alleged that all vehicles had the design defect); *see also Davis v. Ford Motor Co.*, 375 F.Supp.2d 518 (S.D. Miss. 2005) (denying Plaintiff's request for a negative inference jury instruction against Ford where a leasing company owned by Ford disposed of the vehicle in the normal course of its business at a time neither company had any notice of impending litigation).

[12] Products Liability: Design & Manufacturing Defects § 22.14[5][b] Spoliation of Evidence (Mathew Bender 2005); *see also* Spoliation of Evidence, 102 ALR5th 99, § 3[c] (2002) ("Design defect claim does not require injury-causing product to be tested or introduced into evidence.").

[13] *See Bericochea-Cartagena*, 7 F.Supp.2d 109 at 112-13 (expert testimony, plus witness testimony, police report, and photos and claims adjuster's report were sufficient evidence to show issue of fact in design defect case despite unavailability of vehicle).

Further, it appears that both parties are fairly equally prejudiced by the lack of the vehicle in terms of the ability to rule out other physical causes, especially where it was Plaintiffs' theory earlier in the case that there was a tire failure. In the *Drysdale v. Ford*[14] case, another design defect case, the Utah Supreme Court held that where discovery was not yet complete, it was error to grant Ford's motion for summary judgment. The *Drysdale* Court rejected Ford's theory that the plaintiff would not be able to prove its case simply because the vehicle in question was lost, and noted that the loss of the vehicle in question appeared to equally prejudice both parties.[15]

In this case the parties have submitted conflicting evidence on whether the vehicle is necessary for the determination of the proximate cause of the injuries. The resolution of that issue should be left to the jury.

In conclusion, having considered the relative culpability of the Plaintiffs and the possible prejudice to Ford, the Court finds that the loss of the vehicle does not warrant a sanction in this case and, despite the unavailability of the vehicle, Plaintiffs have shown a material issue of fact on causation.

The Court will now turn to the five *Daubert* Motions.

### III.  *DAUBERT* MOTIONS

---

[14] 947 P.2d 678, 681 (Utah 1997).

[15] *Id.*

Ford moves to exclude Plaintiffs' experts on the grounds that they do not meet the reliability standards under the principles set forth in *Daubert*[16] and *Kumho Tire*.[17] The Tenth Circuit has exhaustively explained the *Daubert* analysis in its case law.[18]

> Admission at trial of expert testimony is governed by Fed.R.Evid. 702, which imposes on the district court a gatekeeper function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts.[19]

In analyzing each of the *Daubert* motions under these standards, Plaintiffs, as the proponents of their experts' testimony, have the burden of establishing its admissibility.[20] However, the Court is also mindful that under *Daubert*, a disagreement with the expert's conclusion is not grounds for exclusion. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[21]

---

[16] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[17] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

[18] *E.g. Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1125 (10th Cir. 2004) and *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1163 (10th Cir. 2000).

[19] *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1078-79 (10th Cir. 2006) (quoting *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert*, 509 U.S. at 589)) and *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (internal quotations omitted).

[20] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).

[21] *Goebel v. Denver & Rio Grande Western R.R. Co.*, 346 F.3d 987, 994 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 596).

    A.  <u>Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Renfroe</u>

Dr. Renfroe is Plaintiffs' accident reconstruction expert. Among other things, he has made a PC Crash simulation of the accident. Ford seeks to exclude Dr. Renfroe's opinion on the basis of the reliability prong of *Daubert* arguing that it is mere guesswork or speculation and is based on unreliable evidence concerning the accident.

The Court finds that Dr. Renfroe's opinion meets the reliability prong of *Daubert*. He states the basis for his opinions, including that the figures he used are based on the accident scene photographs and measurements taken by the Utah Highway Patrol at the scene. The Court finds these are sufficient for *Daubert* purposes. As was stated in the *Davis* case, it is not necessary that the actual vehicle be inspected in order for Dr. Renfroe to provide a reliable opinion in a design defect case.[22]

The Court finds that Dr. Renfroe has stated a sufficient basis for his opinion such that it is not mere speculation and guesswork and, thus, meets the *Daubert* standard for admission.

The Court notes that Ford has reserved the issue of exclusion of the PC simulation as prejudicial as part of this motion–but reserves the right to do so in via a motion in limine at trial. The Court encourages the parties to present their arguments on this issue well in advance of Dr. Renfroe's testimony.

    B.  <u>Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Wilson</u>

---

[22] 375 F.Supp.2d at 523-24 (rejecting Ford's argument that because plaintiff's experts "never viewed or inspected the accident vehicle in its post-accident condition," under *Daubert* they did "not have sufficient data upon which to base reliable and accurate expert opinions.").

Ms. Wilson is vocational rehabilitation counselor with her own consulting company. Ford seeks to exclude Ms. Wilson's vocational attainment analysis for Steven North under *Daubert* on the basis that it does not "fit" this case because it does not take into account his actual employment and earnings history.

The Court finds that the Wilson's opinion did consider the actual history and gives considered analysis of her treatment of those facts.  Ford disputes the validity of the treatment in Ms. Wilson's opinion.  However, such a disagreement does not render an opinion inadmissible under *Daubert*.  Instead, such a disagreement is properly the subject of challenge on cross-examination.  Having reviewed Ms. Wilson's opinion under the above-discussed *Daubert* standards, the Court finds it admissible.

C.   Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Jorgensen

Dr. Jorgenson is a psychologist who prepared damages reports based on interviews with the Plaintiffs.  Ford challenges Dr. Jorgensen's opinion on reliability grounds.

The Court finds that Plaintiffs have not met their burden of showing that Dr. Jorgensen's opinions are reliable within the meaning of *Daubert.*  Dr. Jogensen provides no independent diagnosis.  Instead, he relied on incomplete information, and did not include such information as a complete medical and psychological history. He did not include pre-existing conditions such as early adolescent alcohol use by one Plaintiff or post-accident events such as the second car accident involving for a Plaintiff.  As the Tenth Circuit stated in *Bitler*, "the plaintiff must show that the method employed by the expert in

10

reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements."[23]

The Court finds that there is insufficient evidence to establish that a superficial analysis based on an incomplete medical and psychological history—the method apparently employed by the expert in reaching his conclusions—is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements. When, as is the case with Dr. Jorgensen's opinion, the conclusion simply does not follow from the incomplete data he examined, "the court is free "to determine that an impermissible analytical gap exists between premises and conclusion."[24] The Court also finds that such an opinion would not be helpful to the trier of fact. Accordingly, Ford's Motion will be granted as to Dr. Jorgensen's opinions.

D.  Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Metekingi

Ms. Metekingi is a registered nurse and Certified Life Care Planner. Ford seeks to exclude Metekingi's opinion and life care plan for plaintiff Nicole North on the grounds that it is incomplete and does not fit the facts of this case.

The Court finds that Plaintiff has shown that this expert is qualified, that the method employed by her in reaching her conclusions is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements. It is permissible for an expert such as Ms. Metekingi to rely on the reports or information of other experts,

---

[23] 391 F.3d at 1120 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

[24] *Bitler*, (citing *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997))

and to have modified her opinion as further such information became available.  To the extent that Ford disputes her opinion, especially Ford's position that she was not provided with all of the professional information that she said would be needed, those issues are a matter of credibility and weight to be brought out in cross-examination and resolved by the jury.

The Court finds that Ms. Metekingi's opinions meet the standard for admissibility under *Daubert*.

### E.   Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Philips

Dr. Philips is an economist.  Ford seeks to exclude the opinion of Dr. Philips regarding Steven North's future economic losses on essentially the same grounds as it challenged Ms. Wilson's opinion—that it disregards the real life facts of Steven North's employment, education, earnings, and training.  Ford also seeks to exclude Dr. Philips' opinion on Nicole North's economic losses on the ground of a lack of foundation.

The Court finds that Ford's objections to the opinions are matters relating to the credibility of this witness and the weight that the jury may give to his opinions.  Having reviewed the record on this Motion, the Court finds that Dr. Philips' opinions as to future economic losses meet the *Daubert* criteria for admissibility.

IV.  ORDER

For the forgoing reasons, it is therefore

ORDERED that Ford's Motion for Summary Judgment on the Defect Claims and for Failure to Preserve the Subject Vehicle (Docket No. 53) is DENIED.  It is further

ORDERED that Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Renfroe (Docket No. 43) is DENIED.   It is further

ORDERED that  Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Wilson (Docket No. 45) is DENIED.  It is further

ORDERED that Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Jorgensen (Docket No. 47) is GRANTED.   It is further

ORDERED that Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Metekingi (Docket No. 49) is DENIED.  It is further

ORDERED that Ford's *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert Philips (Docket No. 51) is DENIED.

DATED January 23, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge